# IN THE MATTER OF THE NUMBER OF ELECTIVE MEMBERS OF THE LEGISLATURE REQUIRED FOR A MAJORITY.

·Opinion of the Justices of the Supreme Court to the Legislature.

A vote of want of confidence in a Cabinet is required by the 41st Article of the Constitution to be "passed by a majority of all the Elective members of the Legislature."

Held :   That this means a majority of the full quota of the Elective members required by the Constitution, not diminishing the number by vacancies in the seats.

In the Legislature of 48 Elective members, 25 is a majority.

DEPARTMENT OF THE JUDICIARY,
HONOLULU, H. I., September 19, 1892.

*To the Honorable Legislature of the Hawaiian Kingdom :*

The Justices of the Supreme Court have had the honor to receive from your Honorable Body the following resolution :

" *Resolved,* That the opinions of the Justices of the Supreme Court be required upon the following questions, namely :   The Legislature, now consisting of but forty-six elected members, owing to the resignation of two members, are twenty-four or twenty-five of such members required to form a majority of all the elective members of the Legislature within the meaning of Article 41 of the Constitution?"

Article 41 of the Constitution prescribes that the Sovereign shall remove the Cabinet "upon a vote of want of confidence passed by a *majority of all the elective members of the Legislature,*" and the question upon which our opinion is required is, whether this means a majority of all the elective members actually holding seats in the Legislature, or a majority of the full quota

of elective members authorized and required by the Constitution (that is, 48 members), not diminishing this number on account of vacancies. It is evident that the term "elective" is used in order to exclude the Cabinet, who are appointive and not elective members, from participation in such a vote. It is also evident to us that the phrase, "a majority of all the elective members of the Legislature," would not authorize a majority of a bare quorum to pass a vote of want of confidence. And we feel obliged to say that the phrase leaves room for honest doubt as to whether the majority intended is that of the actual members, or of the full number required to be. elected, that is, twenty-four Nobles and twenty-four Representatives. Ordinary legislation is authorized by Article 49 to be conducted by a quorum which is declared to be a majority of the whole body. And a majority vote of such quorum is sufficient for the adoption of any measure. See Rule 5 of the Legislature.

The Constitution provides for four contingencies or subjects upon which the decisive vote shall be otherwise than for ordinary legislation. These are : (1st) Article 41, the vote of want of confidence ; (2nd) Article 48, the vote upon passing a bill over the Sovereign's veto ; (3rd) Article 65, the vote to remove a Judge of a Court of Record ; and (4th) Article 82, the final vote upon an amendment of the Constitution. The language used when these four matters are the subject of a vote in the Legislature is either "a majority of all the elective members," "two-thirds of all the elective members," or "two-thirds of all the members." On such occasions partisan feeling is apt to be warm, and the Constitution has wisely provided in order that insufficient reasons for such action shall not prevail, that the decisive vote on these questions shall be by *not* a majority or two-thirds of the members present, but of the *whole body*, and if the absence of members from the House when the vote is taken is not to lessen the number necessary to a decisive vote, we cannot see why a vacancy by resignation should have that effect. The reasons for such action should be cogent enough to convince a majority of the whole constitutional number of members, and there should be no temptation offered, either to mem-

bers rendered timid in times of public excitement and disposed to evade their duty by resignation, or to others who would seek to induce them to resign, or even to put them out of the way, and thus reduce the number essential to a valid vote.

We consider that this safegard of the Constitution should be preserved in its entirety. The precedents furnished us are in favor of this position. The cases in the Supreme Court of the State of California, *San Francisco vs. Hazen,* 5 Cal., 175, *Mc-Cracken vs. San Francisco,* 16 Cal., 594, *Grogan vs. San Francisco,* 18 Cal., 590, and *Satterlee vs. San Francisco,* 23 Cal., 315—all take the view that the expression in the charter of the City of San Francisco that no ordinance should be passed *" unless by a majority of all the members elected to such Board "* of Aldermen, means a *majority of the votes of the entire number which the charter provided should be elected.* In *San Francisco vs. Hazen,* above cited, the Court said : "If the word ' elected' is to be taken as applying to members actually in office, it follows that by resignation or otherwise the Board may be reduced to one member, and he would be as competent to act as a full Board."

The reasoning of the Court in *Osborne vs. Staley,* 5 W. Va., 85, 13 Am. Rep., 640, sustains the view of the California Court. Here the Constitution of West Virginia provided that "no bill shall be passed by either branch of the Legislature without an affirmative vote of a *majority of the members elected thereto."* The Senate, when full, consisted of twenty-two members ; one seat was vacant by resignation, and the bill received only eleven votes. The Court say : "The true theory of representative government is that a majority of the representatives of all the people to be bound by any law should assent to it, and it cannot be doubted but that the people, when they put this provision in the Constitution, intended to secure themselves against the passage of any law to which a majority of all the people should not consent. The representatives of the people should be governed by the *spirit* of the Constitution, and in doubtful cases should decline the exercise of power. For these reasons, with all respect, it was the duty of the Senate to have declared the bill not passed." But the Court, deeming it not clear beyond a rea-

sonable doubt that the words "*members elected*" referred only to persons elected at the last preceding. elections, although they may have ceased to be members at the time the vote was taken, declined to hold the law unconstitutional.

*Southworth vs. Palmyra & Jackson R. R. Co.*, 2 Mich., 287, holds that the word "House" in the Constitution of Michigan means the members present doing business, there being a quorum, and not a majority of all the members elected ; and an act of incorporation passed by two-thirds of all the members present, there being a quorum, is constitutional. Here the Constitution required the assent of "*two-thirds of each House.*" This case does not aid us, as it would if our Constitution read in Article 41, a "*majority of the Legislature*" or "*House.*"

In *State vs. McBryde*, 4 Mo., 303, the facts were similar to those in the Michigan case. A vote of "two-thirds of each House" was required, and the Court held that two-thirds of a quorum, that is, two-thirds of a majority of all elected, was sufficient. Here there were no vacancies and two members were absent.

In Dillon on Municipal Corporations, Section 261, the learned author says, "A majority of each definite part (of a corporation) means a majority of the number of members of which that part consists, not merely a majority of the existing members of that part."

It is urged upon us that this rule of construction, while applying to acts of corporations, does not apply to legislative acts. We can see no reason why it does not, except that in corporations the body consists of a much smaller number of members, and the reason why the majority should be of the full number required by the charter is correspondingly stronger.

After mature study, our opinion is that the meaning of Article 41 of the Constitution is that twenty-five votes of the elective members of the Legislature are necessary in order to pass a vote of want of confidence in the Cabinet.

Respectfully submitted,

A. F. JUDD,

RICH. F. BICKERTON.

## OPINION OF MR. JUSTICE DOLE.

The words of the Constitution are capable of both of the constructions contended for, but in view of our accepted practice that when there are vacancies in the seats of the elective membership, the Legislature is still a legal body to carry on its work, the construction claimed by the Opposition—that is, that the majority of existing elective members is competent to pass a vote of want of confidence in the Cabinet, is, as it seems to me, the more obvious and natural one. Such a construction requires no addition of words or train of reasoning in order to make it fit the language of the Constitution.

On the other hand, I find that the American authorities, so far as I have been able to consult them, are practically unanimous in favor of the construction contended for by the supporters of the Ministry. The greater part of these cases discuss the legislative powers of municipal corporations, and it is contended here against the value of these cases that they do not apply to the question submitted to us, because such bodies are the creatures of the statute and have a different status from the legislative body of a nation. I admit that there are differences between a board of aldermen and the Legislature of a state or nation, but, in the principles relating to the legislative functions of such a board, I know of no reason why they should differ from those governing a national Legislature, nor have any been shown, except that the membership of a municipal corporation is generally small as compared to that of a Legislature, and therefore a vacancy in the former is a more serious matter than is a vacancy in the latter. But the reasoning in the West Virginia case of *Osborne vs. Staley*, referred to in the opinion of the majority of the Justices, adopts the same view regarding a State Legislature as is held by the California cases in regard to municipal corporations.

The difference of language in our Constitution, which uses the words "elective members," from that used in the constitutions and charters under discussion in the cases referred to, which use the words "elected to," might perhaps support an

argument in favor of a different construction of our Constitution, but the difference in meaning of these words is so slight and uncertain that I am not disposed to consider it.

Under these circumstances I am led to follow the American authorities, and to concur in the conclusion of the majority of the Justices of the Supreme Court.

SANFORD B. DOLE.